Wilson W. COOK, Plaintiff,

v.

**MORAN ATLANTIC TOWING CORP. and Moran Towing & Transportation Co. Inc., Defendants.**

**No. 77 Civ. 1924–CSH.**

United States District Court, S. D. New York.

Nov. 2, 1977.

Klein, Cohen & Schwartzenberg, New York City, for plaintiff; Max Cohen, New York City, of counsel.

Burlingham, Underwood & Lord, New York City, for defendants; James W. Lynch, New York City, of counsel.

MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff Wilson W. Cook, a tug deckhand, commenced this action in April of 1977 against defendants Moran Atlantic

Towing Corporation and Moran Towing & Transportation Co., Inc. (collectively referred to as "Moran"), to recover damages for injuries to his left leg incurred while serving on board a Moran tug on December 20, 1976. Those injuries required eventual amputation of a portion of the leg below the knee.

Cook retained the firm of Klein, Cohen & Schwartzenberg to commence the action in this Court. The complaint was filed and a summons issued on April 21, 1977; service upon Moran was effected on April 22. Defendants filed their answer on May 5, accompanying it with a demand that plaintiff appear for pre-trial deposition in the office of Fred R. Profeta, Jr., Esq., counsel for Moran, in New York on June 12.

The case is now before the Court on Moran's motion pursuant to Rule 26(c)(1), F.R.Civ.P., for an order directing that discovery be stayed pending completion of settlement negotiations among the parties. Moran also moves pursuant to General Rule 4(c) of this Court for an order relieving the Klein firm from further representation of plaintiff in the case, and setting the compensation of that firm for professional services already performed.

The Klein firm resists both aspects of Moran's motion. The basic premise put forward by the Klein firm is that Moran has overreached a severely injured seaman. In the Klein firm's view, an evidentiary hearing should be held to explore the full circumstances of settlement negotiations entered into between Moran and Mr. Cook, subsequent to the filing of suit, and without the knowledge of the Klein firm. The Klein firm also takes the position that it is entitled, in the circumstances of the case, to relief greater than the mere fixing of its fee under its attorney's lien in the event that a settlement is consummated.

Before dealing with the contentions of the parties, it is necessary to review the pertinent facts, as revealed by the motion papers.

## I.

As noted above, defendants answered the complaint and noticed plaintiff's pre-trial deposition on May 5. On May 20 defendants received what their counsel refer to, on this motion, as "an unsolicited copy of a letter from plaintiff to his attorneys" dated May 10.[1] That letter, apparently verified on May 13 before a notary public in Louisiana, where Mr. Cook lives, was addressed by Mr. Cook to the Klein firm. It reads in its entirety:

> "After giving the matter considerable thought, I have decided that your services will no longer be required. I am enclosing a check for $500.00 dollars and will pay the balance owed you upon my arrival in New York, if not sooner.
>
> "Thank you for your service. I will gladly contact you in the future for legal advise [sic] if the need arises."

By letter dated May 31, 1977 Mr. Profeta wrote to the Klein firm, referring to Mr. Cook's letter of May 10, and asking the Klein firm whether it was now prepared to "dismiss the pending action in the Southern District."[2]

Insofar as appears, the Klein firm did not respond to Mr. Profeta's letter of May 31. According to Moran's motion papers, Mr. Cook failed to appear for a deposition scheduled for June 15.[3] By letter dated June 22, 1977, Cook again wrote to the Klein firm[4] as follows:

> "Mr. Klein:
>
> "I got your letter of May 19th and read it and I understand it but I am sticking by my letter of May 10th. I thank you for the interest in my case but I don't need your services.

1. Affidavit of James W. Lynch, in support of motion, at p. 2. Mr. Lynch is a member of the firm of Burlingham, Underwood & Lord. Mr. Profeta is not associated with that firm. Mr. Profeta and the Burlingham firm appear to have undertaken a joint defense of the Moran interests.

2. Ex. B to Lynch affidavit.

3. *Id.* at p. 2.

4. Ex. C to Lynch affidavit.

"Enclosed is a check for $500—this is the rest of the $1,000 given me in Baltimore. "Do not do any more work on my case. Stop the law suit in New York."

The Klein firm acknowledged Cook's June 22 letter in a letter dated June 30.[5] In that letter, Mr. Klein observed that he was "bound by your instructions to take no further action in the above case." Mr. Klein goes on to say that since his firm's discharge was for personal considerations, the firm had an attorneys' lien for its services; and that the firm preserved its status as Cook's attorneys of record. The latter statement is consistent with General Rule 4(c) of this Court, which provides that an attorney of record may be relieved or displaced only by order of court.[6]

In order to clarify the posture of the litigation, counsel for Moran requested that a conference be held before the Court on July 26. Mr. Profeta and Mr. Lynch appeared for Moran; Messrs. Klein and Cohen of the Klein firm appeared for Mr. Cook (no Rule 4(c) order having yet been entered; it is also fair to say that Messrs. Klein and Cohen appeared on behalf of their own firm). At that conference, a spirited dialogue ensued with respect to the timing, nature and substance of communications between Moran and Cook, looking towards a possible settlement. Counsel for Moran took the position that the Klein firm had been discharged, and should withdraw, subject to whatever subsequent protection their attorneys' lien might afford to them. Messrs. Klein and Cohen suggested the possibility of overreaching of Mr. Cook by Moran, and declined to withdraw from the case. The Court expressed the view that any formal applications for relief would have to be made on papers, with copies served upon Mr. Cook.[7]

Moran's motion followed, originally made returnable on September 9. It appears from the affidavit of service that, in accordance with the Court's direction, copies of the motion papers were mailed to Mr. Cook at his home in Baton Rouge. The Klein firm has submitted an affidavit of Mr. Klein dated September 29 and a memorandum of law, in opposition to the motion. It appears from the affidavits of service in respect of these documents that service was made only upon the Burlingham firm, and not upon Mr. Cook.

In his affidavit in opposition, Mr. Klein recites the following facts:

(1) When Mr. Cook's original letter of May 10 discharging the Klein firm was purportedly verified in Louisiana on May 13, Mr. Cook was in fact confined as an inpatient at the United States Public Health Service Hospital in Baltimore (¶ 5).

(2) Following the court conference on July 26, Mr. Klein spoke by telephone to Mr. Cook, who was then recuperating at his home in New Orleans. Cook told Klein that, subsequent to the July 26 conference but prior to filing of the motion, Cook had received $10,000 "as an advance from defendants" (¶ 13).

(3) On September 16, Klein met with Cook in New Orleans "in order to review the entire situation"; at the meeting Cook was accompanied by his brother and sister-in-law; they confirmed the fact that Moran "had paid Mr. Cook $10,000 as an advance; and that no settlement had yet been reached in the case." Mr. Klein's affidavit continues:

"It was obvious to all that the recent hospital ordeal that Mr. Cook had experienced, i.e., a leg amputation, had effected a tremendous impact, both psychologically and physically. Although he faced a affidavit of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar."

---

5. Ex. D to Lynch affidavit.

6. Rule 4(c) provides:
"An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court and may not withdraw from a case without leave of the Court granted by order. Such an order may be granted only upon a showing by

7. While various oral representations were made at the conference, I shall consider upon the resolution of this motion only such representations as appear in sworn affidavits.

difficult and bleak future and had to make a momentous decision, he made little active contribution toward our discussion. In fact, I did conclude that he was not geared psychologically to fully appreciate the consequences of the present situation of abandoning counsel." (¶ 14).

Since, as noted, the Klein firm did not forward a copy of this affidavit to Mr. Cook, the Court does not have before it any specific comments by Cook upon the contents of the Klein affidavit. However, counsel for Moran have forwarded to the Court a verified letter from Mr. Cook dated September 23, addressed "To Whom It May Concern" which reads:

"I wrote a letter May 10, 1977 telling Klein, Cohen & Schwartzenberg that I did not want their services.

"Mr. Klein came to see me in New Orleans September 19, 1977 and discussed my case. I still do not want his services and I would like the court to dismiss him as my attorney. I would like him to stop contacting me and my family immediately."

It is against this factual background that the present motion must be decided.

## II.

▪ We start with the proposition that "a client has an absolute right to settle a case without the consent of his attorney." *Raabe v. Universe Tank Ships*, 263 F.Supp. 786, 787 (S.D.N.Y.1966); see also *Lewis v. S.S. BAUNE*, 534 F.2d 1115, 1122 (5th Cir. 1976) ("Courts have consistently held that parties have a right to settle or compromise their litigation without the knowledge or consent of their counsel" [citing cases]).

▪ It necessarily follows that a party may, in the course of settlement negotiations conducted directly with his adversary, discharge his own attorney of record. The Klein firm does not dispute that proposition.[8]

8. "There is no question but that a client is entitled to discharge his attorney at any time, and for any reason." Klein affidavit, ¶ 16.

In the case at bar, Mr. Cook has written three letters discharging the Klein firm. Whatever questions may arise with respect to execution of the first of these letters, dated May 10, it is apparent that the third letter, dated September 23, was written after Mr. Cook had returned home from the hospital, and was receiving, in connection with his interviews with Mr. Klein, the support and advice of members of his immediate family. This thrice-reiterated expression of intent[9] lays a sufficient foundation for an order of displacement under Rule 4(c).

This conclusion, however, is not sufficient to dispose of the questions raised by the present motion. The following questions remain:

(1) Have the settlement negotiations to date been tainted by any overreaching by Moran of Cook; and would any ultimate settlement that may be achieved be so tainted?

(2) To what remedy is the Klein firm entitled in respect of its claim for compensation for legal services rendered to Mr. Cook?

We consider these questions in order.

## III.

In *Raabe, supra*, plaintiffs were the representatives of three German and seven Okinawan seamen who died in a disaster at sea in 1964. Plaintiffs' New York attorneys moved for an order voiding settlements reached with the three German plaintiffs; and enjoining defendants from communicating with the Okinawan plaintiffs. This court, in an opinion by Judge Cooper, denied both motions on the papers then before it. As to the settlements with the German plaintiffs, the court said:

"These settlements were admittedly made without the consent or knowledge of plaintiffs' New York attorney. This in itself is not sufficient reason to avoid the settlements. A client has an absolute

9. "What I tell you three times is true." Lewis Carroll, *Hunting of the Snark.*

right to settle a case without the consent of his attorney. *Matter of Snyder*, 190 N.Y. 66, 82 N.E. 742, 14 L.R.A., N.S., 1101 (1907). *Absent a showing by the German plaintiffs of overreaching or other impropriety by defendants*, this court will not void the settlements." 263 F.Supp. at 787 (emphasis added).

As to defendants' direct communications with the Okinawan plaintiffs, the court considered that they raise "more disturbing questions." The court went on to state:

"Seamen, their widows and offspring are the wards of Admiralty and come within the special protection of this Court. *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942); *Hassan v. A. M. Landry & Son, Inc.*, 321 F.2d 570 (5th Cir. 1963), cert. denied 375 U.S. 967, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964). This Court, cognizant of the inherent inequality in any negotiations between the corporate defendants and plaintiffs, would look with disfavor upon any steps tantamount to circumventing plaintiffs' attorney. We have the power to regulate the conduct of litigants and attorneys seeking justice. However, upon the papers before us, we cannot find that defendants have perpetrated such acts of oppression, harassment or overreaching as to now entitle movant injunctive relief.

"Motion denied without prejudice upon a showing that would warrant court interference." 263 F.Supp. at 787.

In *Lewis, supra*, a collision occurred between the Norwegian steamship BAUNE and the American steamship KEY TRADER in the Mississippi River. Several Jamaican seamen, crew members of the BAUNE, were killed. Members of their family retained a Baton Rouge law firm to file suit. Representatives of the Norwegian shipowner contacted the Jamaican claimants, without the consent of plaintiffs' counsel, in an effort to negotiate a settlement. The district court enjoined such communications, as "interfering with the attorney-client relationship", and convicted the Norwegian interests of contempt for violating an earlier temporary restraining order. The Fifth Circuit reversed the injunction, as overly broad and inappropriate in the circumstances of the case; the contempt holding fell with the injunction. In the course of its opinion, however, the Fifth Circuit observes:

"We would not go so far as to say that parties have an *absolute right* to settle behind the backs of counsel. Parties certainly do not have a right to obtain a settlement through duress, harassment, or overbearing conduct. The power of courts to enjoin harassment or repeated invasions of privacy is recognized, *Bivens v. Six Unknown Named Agents of Fed. Bur. of Nar.*, 2 Cir. 1969, 409 F.2d 718, 725, *rev'd on other grounds*, 1971, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619; *Galella v. Onassis*, S.D.N.Y.1972, 353 F.Supp. 196, *modified*, 2 Cir. 1973, 487 F.2d 986. *But see, Alberti v. Cruise*, 4 Cir. 1967, 383 F.2d 268. There is no reason the recurrent harassing conduct of a party in pursuit of a settlement may not be enjoined. But the injunction here did not speak to such conduct." 534 F.2d at 1122 (court's emphasis).

The Fifth Circuit continues:

"No one would argue about the fact that there exists a great inequality in bargaining strength between the huge shipping corporation and the indigent and unsophisticated claimants. This inequality is exacerbated by the defendants' circumventing the claimants' attorneys whose purpose, among other things, is to equalize the respective bases of bargaining strength between the parties and see that any settlement which may be reached is fair and equitable. But we are not convinced that the extraordinary remedy of injunction is the proper method of dealing with the problem. We think that the power to set aside any settlement gained by overbearing conduct, duress, or coercion, fraud, or overreaching militate against a finding of irreparable injury and preclude the district court's resort to the equitable remedy of injunction in a case of the kind we now have before us." Id. at 1123.

Reciting the familiar fact that a seaman is a ward of the admiralty, so that a settlement agreement "executed by a seaman will be subjected to a careful scrutiny by the courts", the Fifth Circuit cited *Garrett v. Moore-McCormack Company*, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942) as declaring the standards by which a seaman's release is to be judged:

> ". . . the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with a full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding." 317 U.S. at 248, 63 S.Ct. at 252.

In the case at bar, it is premature to undertake an inquiry as to whether or not Moran has sought to overreach its employee, Cook. That question does not become meaningful until a settlement has been agreed upon, and is presented to this Court for approval. If and when such contingency arises, the Court will apply the standards declared in *Garrett* and reiterated in *Lewis*. See also *Kelcey v. Tankers Company*, 217 F.2d 541, 545 (2d Cir. 1954).

By this discussion I do not intimate one way or the other whether Moran has overreached Cook, or is attempting to do so. The papers presently before me do not permit a conclusion one way or the other. If a settlement is subsequently negotiated, its approval by the Court will be dependent upon the filing of additional affidavits, filling in the gaps in the present record. Specifically, before the Court approves any settlement, it will require affidavits from any of Moran's attorneys or its representatives who have communicated with Mr. Cook, setting forth in detail the identity of the attorney or representative; the date of the communication; where Mr. Cook was at the time; the form of the communication, whether oral or written; and its substance. An affidavit from Mr. Cook, dealing with the same questions, will also be required. In addition, the Court will require copies of such medical records as exist which evidence Mr. Cook's physical and mental condition during the time of settlement negotiations, and as of the date of the proposed settlement.

In order that the Court may be kept advised, this case will be called for further conference on Friday, January 13, 1978, at 3:00 p.m., unless a proposed settlement has been previously submitted for Court approval. If no settlement has been negotiated by January 13, 1978, and none is anticipated, then Mr. Cook will be obliged to consider again the appointment of counsel to represent his interests in the proceedings before the Court.

A copy of this opinion is being mailed by the Court to Mr. Cook so that he may be fully advised.

## IV.

With respect to the position of the Klein firm, circumstances may arise which lead to the inference that a defendant settled plaintiff's claim directly for the express purpose, not only of terminating the claim, but also of depriving plaintiff's counsel of compensation. This situation arose in *Katopodis v. Liberian S/T OLYMPIC SUN*, 282 F.Supp. 369 (E.D.Va.1968), which the Klein firm cites on the present motion. In *Katopodis*, another seaman's injury case, plaintiff's counsel had participated in negotiations leading towards an agreed settlement. Thereafter, representatives of the defendant contacted plaintiff and agreed upon a settlement of his claim directly with him, seeking in such a manner to bypass plaintiff's counsel entirely. In these circumstances, which the court properly characterized as "reprehensible", the defendant was held liable to pay plaintiff's counsel out of its own funds, in addition to the amount paid to plaintiff in settlement. The court observed:

> "There is no question that defendant in negotiating the settlement with plaintiff 'behind the back' of plaintiff's counsel, and its own local counsel, knew of the

plaintiff's counsel's lien, the recommended settlement, the approximate net amount which plaintiff would have received, and all of the facts and circumstances, and that it acted in bad faith. After the action was commenced, the attorney was a party in interest to the litigation. The defendant settled the litigation with plaintiff at his peril. Where he does so, as here, in bad faith or to prevent the attorney from collecting his fee, defendant is liable therefor." 282 F.Supp. at 372.

The court in *Katopodis* found it unnecessary to decide whether, in such a case, the proper measure of compensation was the terms of the original retainer agreement or the doctrine of *quantum meruit*, since "the use of either method would produce about the same result." *Id.* at 372.

*Katopodis* would appear to be distinguishable from the case at bar, in that no recommended settlement had been reached prior to the discharge of the Klein firm by Cook. However, no final determination of this aspect of the case can be made until Cook's claim is disposed of, either by settlement, if one is negotiated, or by trial resulting in a judgment in his favor. But the *Katopodis* case does point the way towards a useful procedural device in situations of this nature. In order that his position might be protected, plaintiff's counsel in *Katopodis* was ordered made a party plaintiff, "so far as his interest may appear herein." *Id.* at 370. The order which the Court is entering in the case at bar contains a comparable provision in respect of the Klein firm.

## CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

■ 1. The firm of Klein, Cohen and Schwartzenberg is hereby displaced as counsel for plaintiff Wilson W. Cook. The Klein firm is accordingly relieved of further professional responsibility in respect of the case; and is directed to refrain from further communication with Mr. Cook.

2. The firm of Klein, Cohen and Schwartzenberg is hereby made an additional party plaintiff herein, so far as its interests may ultimately appear.

3. In these circumstances, pre-trial discovery proceedings are stayed pending continuation of settlement negotiations between Cook and Moran, and pending the further order of this Court.

4. This Court retains jurisdiction of the case, for the purpose of considering any proposed settlement, or going forward with pre-trial procedures and trial if no settlement is negotiated.

5. Any proposed settlement must be accompanied by the supporting affidavits referred to in this opinion. The Court, following consideration of such affidavits, will determine whether to approve the settlement, reject it, or direct a further inquiry.

6. The Court also retains jurisdiction of the case in order to determine the fair and proper compensation, if any, owing to the Klein firm upon termination of the case.

7. If no proposed settlement has been submitted for Court consideration prior to January 13, 1978, counsel for Moran and a representative of the Klein firm are directed to appear for further conference before the Court at 3:00 p.m. on that day.