Salvatore **PAOLILLO**, Plaintiff,

v.

**AMERICAN EXPORT ISBRANDTSEN LINES, INC.**, Defendant.

Nos. 66 Civ. 1737, 68 Civ. 1154, 68 Civ. 2604.

United States District Court S. D. New York.

Oct. 14, 1969.

Klein & Sterling, New York City, for plaintiff; Benjamin B. Sterling, New York City, and Emanuel Hirschberger, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendant; Hollis M. Walker, Jr., New York City, of counsel.

Rolnick, Ezratty & Huttner, New York City, formerly for plaintiff; Bernard Rolnick, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

This is an application by Rolnick, Ezratty & Huttner for an order fixing their fee for services rendered by them in the above case. The matter is the usual one, attorneys working on a contingent fee who were discharged and other attorneys substituted to complete the case.

[1-3] The applicable principles are few and not difficult to apply. The client always has the right to discharge his attorney, even without cause. "When this happens, the attorney is entitled to compensation, determined by quantum meruit, whether that be more or less than that provided in the contract or retainer between the attorney and client."[1] The outgoing attorneys have the option of taking a fixed dollar amount compensation, presently determined on a basis of *quantum meruit*, or, instead, of taking a contingent amount or percentage also based on *quantum meruit* but with the amount or percentage determined in an ancillary proceeding at the conclusion of the case. Payment on either basis is in satisfaction of a charging lien upon the client's claim and any recovery which may be obtained under Section 475 of the Judiciary Law of the State of New York, 29 McKinney's Consol.Laws of New York, c. 30, art. 15, § 475.[2] The charging lien is not disturbed by an order of substitution or by any settlement between the parties.[3]

The question presented, therefore, is what is the reasonable value of the services rendered by the applicants? The factors to be considered in answering this question are set out in Canon 12 of the Canons of Professional Ethics of the American Bar Association. They are: (1) time; (2) standing of the lawyer at the bar; (3) amount involved; (4) benefit to the client and (5) skill demanded.[4]

Taking these factors seriatim, we are met at the threshold with the fact that

---

1. Reubenbaum v. B. & H. Express, Inc., 6 A.D.2d 47, 47–48, 174 N.Y.S.2d 287, 289 (1st Dep't 1958).

2. "Section 475 provides:

   '§ 475. Attorney's lien in action, special or other proceeding

   'From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.'

   A lien under this state statute may be determined and enforced summarily in a proceeding ancillary to the main suit in the United States District Court. See Nic Projector Corporation v. Movie-Jecktor Co., D.C.S.D.N.Y.1935, 16 F.Supp. 605, 606; Ingold v. Ingold, D.C.S.D.N.Y. 1939, 30 F.Supp. 347, 348; Nolan v. Hemingway Bros. Interstate Trucking Co., D.C.S.D.N.Y.1950, 88 F.Supp. 111, 113. Section 475 is to 'be treated as one establishing a substantive right.' See In re Baxter & Co., 2 Cir., 1907, 154 F. 22, 25." Application of Kamerman, 278 F.2d 411, 412–413 n. 1 (2 Cir. 1960).

3. Gangewere v. Bernstein, 199 F.Supp. 38 (S.D.N.Y.1961); Robinson v. Rogers, 237 N.Y. 467, 470, 143 N.E. 647, 33 A.L.R. 1291 (1924). The New York Judiciary Law, § 475, 29 McKinney's Consol.Laws of New York, art. 15, § 475, codifies the charging lien, and this statute applies in this federal court. Nolan v. Hemingway Bros. Interstate Trucking Co., 88 F.Supp. 111, 113 (S.D.N.Y. 1950).

4. Spanos v. Skouras Theatres Corp., 235 F.Supp. 1 (S.D.N.Y.1964), aff'd in Banc, 364 F.2d 161, 168 (2 Cir.), cert. denied, 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966).

the applicants did not keep time records, although they did keep a diary of work done. Failure to keep time records is understandable, since they were retained on the basis of a contingent fee. It is regrettable, nonetheless, for any attorney who might be required to have the amount of his fee fixd by a court should keep accurate and current records of work done and time spent.[5] The diary records are exceedingly cryptic and vague and of almost no help in providing us with a sound basis for time estimates. We are left, therefore, with little more than our own experience of the time and skill required for the performance of the work shown in the diary.

The applicants were retained by plaintiff on April 5, 1966 on a 33⅓% contingent fee arrangement to bring an action under the Jones Act for two claims for personal injuries sustained on board the S.S. Constitution on two separate occasions, November 9, 1965 and February 22, 1966.[6] Both claims were based on stereo-type "slip and fall" accidents; the first on a wet, soapy deck and the second on grease. However, plaintiff did sustain injuries to his right leg in the first fall and to his right leg and right elbow and wrist in the second.

In June 1966, the applicants prepared and filed a routine Jones Act complaint, asserting the usual claims for negligence and unseaworthiness. The applicants continued to represent plaintiff for approximately 17 months, but they took no further legal steps whatever by way of discovery or otherwise. Nor did they do any legal research or prepare any memoranda of law or fact up to the time they were discharged on September 7, 1967.

This omission of pretrial procedures is neither blameworthy nor unusual, for these simple personal injury cases involve minimal factual preparation and virtually no legal research. Not all motion is progress. Our experience teaches that in simple personal injury cases, discovery and pretrial procedures, however lauded by some, are often overworked, unnecessary and useless. Much of the lawyer's effective work consists not in endless courtroom appearances or formal pretrial procedures but in careful investigation of his case, and he is entitled to be fairly compensated for his efforts in or out of court.

Thus, here applicants did confer once with defendant's claim agent but received no settlement offer. They did, however, obtain maintenance which was apparently uncontested. They also attempted unsuccessfully to obtain disability benefits for plaintiff from the State of New Jersey. We think a maximum of 18 hours of lawyer's time is reasonable for this work, including preparing and filing the complaint.

In addition, applicants filed a retainer, took a few photographs of the scene of the accidents, received a medical record, prepared a history for submission to doctors, sent plaintiff to two doctors, boarded the vessel five times, interviewed five witnesses, took the statement of one of them, obtained hospital records, received reports from examining doctors and conferred with plaintiff on 21 occasions. We think a reasonable time for this work is about 25 hours of lawyer's time.

The remainder of the diary consists of about 80 entries of routine correspondence, largely of a clerical nature, which would require little more from a lawyer, in some instances, than a direction to his secretary, for example, to send the maintenance check due for a certain period to the client, or to send medical charts to an examining physician. We think on the average each of these letters would take no more than five minutes, more or less, of lawyer's time and therefore estimate the time spent on correspondence as about seven hours.

5. *Cf.*, In re Hudson & Manhattan R.R., 339 F.2d 114, 116 (2 Cir. 1964).

6. Plaintiff was also injured on two subsequent occasions, but he never retained the applicants in connection with these injuries.

Based on the foregoing, we estimate the applicants spent a total of 50 hours of lawyer's time on this case.

The services rendered by a law firm, however, are not limited to those performed by lawyers. We think it is fair to assume that for every hour spent by a lawyer at least another hour is spent by clerical help. This is rather obvious when we think of a lawyer dictating a letter to a stenographer, who must spend time as she takes dictation, transcribes her notes and mails the letter.

In addition, law firms are also required to employ bookkeepers, switchboard operators and receptionists and to carry other items of overhead, such as rent, libraries, files, telephone, lights etc. The firm is entitled to be fairly compensated for these services. We will take these auxiliary services into account and absorb them in fixing the hourly rate for lawyer's time.

Turning to the remaining factors to be considered, it is most difficult to estimate the amount involved in this suit for personal injury. The problem is doubly difficult here because plaintiff sustained injuries subsequent to the claims involved in the action brought on his behalf by the applicants. Thus, he was injured again on April 4, 1967 and November 4, 1967 but did not retain applicants to represent him as to those claims. He did, however, retain the substituted attorneys who vigorously prosecuted all of his claims and successfully settled all of them together for $31,000.

According to the substituted attorneys, the settlement was based on the condition of plaintiff as a result of the last two injuries which resulted in his discharge from the Public Health Service Hospital as permanently unfit for duty. Reports from the doctors retained by the applicants to examine plaintiff, however, show that although plaintiff was marked fit for duty after his two earlier accidents, the doctors were of the view that he had permanent injury to his right leg and limitation of motion both in his right arm and wrist. Moreover, he was required to wear a brace on his right leg. Surely, these injuries were of sufficient severity to warrant a substantial settlement in the order of $10,000 to $15,000 wholly apart from later injuries or aggravation to these preexisting injuries caused by later accidents. We, therefore, estimate that the amount involved in the case was $12,500.

The dockets of this court show that the substituted firm filed 34 out of 36 legal papers in this action from October 2, 1967 through July 14, 1969. Suffice it to say that, as reflected in the dockets, the substituted attorneys' labors far outweighed those of the applicants. It is common knowledge that vigorous prosecution is the most common cause of a settlement. Although applicants did not prosecute plaintiff's case vigorously, they did do much to establish liability and the extent of the injuries sustained. This work was of definite benefit to the client and, however denigrated by the substituted attorneys, was unquestionably of value to them in negotiating a settlement of all of plaintiff's claims by payment of one lump sum.

Considering the final factor of the skill demanded, "slip and fall" Jones Act cases are among the simplest of all cases. Nonetheless, they do demand sufficient learning and skill to know which facts are material and to gather and preserve relevant evidence while transitory witnesses are still available. This, of course, must be done and the action commenced before the statute of limitations runs on the claim. Experience and know-how, of course, are extremely important factors in accomplishing these vital preliminary steps. It is customary, therefore, to charge more for a senior lawyer's time than for a junior's. It appears that the lawyer's time spent here was that of the senior partner, Mr. Rolnick, a lawyer in good standing.

Based on the foregoing and after thoroughly reviewing all of the papers submitted on this application and carefully considering all of the relevant factors, we find that an hourly rate of $60 for lawyer's time is fair and reasonable.

Accordingly, we find that the fair and reasonable value of the estimated 50 hours of services rendered by the applicants is the sum of $3,000.

It appears from the file that an unsigned order to show cause was filed by the applicants at the time of hearing of this motion. This seems to us to burden the court with duplicate labors. We, therefore, refuse to sign the order and deny the application there made for the appointment of a Special Master as wholly unnecessary.

Settle order on notice within ten (10) days.