Wilson W. COOK and Klein, Cohen & Schwartzenberg, Plaintiffs,

v.

MORAN ATLANTIC TOWING CORP. and Moran Towing & Transportation Co., Inc., Defendants.

No. 77 Civ. 1924–CSH.

United States District Court, S. D. New York.

July 14, 1978.

See also, D.C., 76 F.R.D. 481.

Klein, Cohen & Schwartzenberg, New York City, for plaintiffs.

Burlingham, Underwood & Lord, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This case is before the Court for approval or rejection of the defendants' settlement of plaintiff's claim. In the event of approval of the settlement, the question of compensation of the law firm originally retained by plaintiff, but discharged by him prior to settlement, also arises. In addressing the issues, the parties have followed the procedure set forth in the Court's Memorandum Opinion and Order of November 2, 1977, 76 F.R.D. 481, familiarity with which is assumed for the purposes of the following discussion.

Plaintiff Wilson W. Cook was born on November 9, 1918. On December 20, 1976, when he was 58 years old, Cook was sailing as a deckhand aboard the tug ALICE MOR-AN, owned and operated by the defendants. On that date he suffered an injury which ultimately required the amputation of his left leg below the knee.

The accident occurred in the port of Baltimore. After first being taken to the Union Memorial Hospital in that city, Cook was thereafter transferred to the United States Public Health Service Hospital in Baltimore, being admitted to that facility on December 22, 1976.

On January 21, 1977, while a patient in the Public Health Service Hospital in Baltimore, Cook executed a written agreement with the firm of Klein, Cohen & Schwartzenberg (the "Klein firm"), which reads in full as follows:

"I hereby retain Klein, Cohen and Schwartzenberg 15 Park Row, New York City, as my attorneys to prosecute my claim for damages in the above case, and I hereby agree to pay all necessary disbursements and 33⅓% of any proceeds recovered by way of suit, settlement, judgment or verdict.

"No fee is to be charged unless a recovery be had and no settlement is to be made without my consent."

The Klein firm filed suit on Cook's behalf in this Court. In May, 1977, Cook discharged the Klein firm as his attorneys, and thereafter entered into direct settlement negotiations with the defendants, as a consequence of which defendants paid Cook $108,000, plus maintenance in the amount of $672, against a general release.

The Court has examined the medical records in the case, together with the affidavits of Mr. Cook and the other participants in the case, and the memoranda of counsel. The questions of the acceptability of this settlement, and the compensation of the Klein firm, are considered in order.

### Acceptability of the Settlement

The Klein firm appeals to the Court as protector of the interests of this seaman plaintiff, a ward of the admiralty. The settlement amount is attacked as insufficient in amount, and as having been obtained by the overreaching of the defendants, who, by the efforts of their representatives, lay and professional, took advantage of Cook's weakened condition.

I find no basis in fact for any of these contentions. Mr. Cook undoubtedly had a difficult and painful time of it. His injury,

amputation, and convalescence were undoubtedly attended by periods of considerable discomfort. The administration of medication to him, and other medical procedures, undoubtedly resulted in intermittent episodes of reduced lucidity. These phenomena are all reflected by the medical records. However, there is no basis in those records, or in the affidavits submitted in these proceedings, including that of Mr. Cook, which would support the finding that Mr. Cook's decision to discharge the Klein firm, and to accept a settlement payment of $108,000 from defendants, were anything other than the products of the rational operation of his free will, supported by immediate members of his family. The assertions in the affidavits of the Klein firm on the issue of overreaching, while vivid in phrasing, are conclusory in nature, and are not persuasive within the context of a contested issue of fact.

■ The same may be said of the Klein firm's contention that $108,000 is entirely inadequate in amount. In order to sustain that contention, the inadequacy of the settlement amount, when viewed in the light of the injuries, must be so flagrant as to shock the conscience of the court. Fully recognizing that Mr. Cook suffered a serious and painful injury, permanent in nature, the sum of $108,000 is nonetheless a considerable one, particularly considering that at age 58 Mr. Cook was in any event towards the end of his working career as a seaman; and that this amount is net to him, free of any legal expense (see discussion *infra*). The Klein firm offers no legal authority demonstrating the inadequacy of the amount in these circumstances, and I am not persuaded by their conclusory arguments on the subject.

In short, the settlement amount is approved as fair and reasonable.

### Compensation of the Klein Firm

The Klein firm takes the position that it is entitled to enforce its one-third contingency retainer agreement against the $108,000 settlement figure, and also to recover disbursements. On that basis, the firm claims an amount in excess of $36,000.[1]

Defendants argue that the Klein firm's compensation is measured by a *quantum meruit* evaluation of the services they rendered prior to their discharge.

Whatever the amount, it is the defendants and not Cook who will pay it. By separate agreement with Cook, defendants have assumed the responsibility of discharging the latter's obligation to his discharged attorneys.[2]

■ Resolution of the issue in this forum turns upon New York law. *Paolillo v. American Export Isbrandtsen Lines, Inc.*, 305 F.Supp. 250, 251 n. 3 (S.D.N.Y.1969). The Klein firm relies particularly upon Section 475 of the Judiciary Law of the State of New York, 29 McKinney's Consol.Laws of New York, C. 30, art. 15, § 475,[3] and two New York Court of Appeals decisions: *Ward v. Donovan*, 235 N.Y. 240, 139 N.E.

1. Neither the precise figure claimed by the firm, nor the manner of calculation, are clear from the motion papers. One-third of the settlement amount of $108,000 is $36,000, exclusive of disbursements. The firm's main brief (p. 4) claims a total of $36,655.43, although the Klein affidavit of April 7, 1978 lists disbursements of $983.15. To compound the confusion, that affidavit also refers to an earned fee of $35,672.28 (¶ 8).

2. Defendants' brief at p. 9. The effect is to guarantee Cook's net recovery, an arrangement of the sort noted in earlier cases. See *Ward v. Donovan*, 235 N.Y. 240, 243–244, 139 N.E. 254 (1923).

3. That section provides:

"From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien."

254 (1923) and *Matter of Reisfeld,* 227 N.Y. 137, 124 N.E. 725 (1919).

*Ward* and *Reisfeld* both stand for the proposition that where a client enters into a contingent fee agreement with an attorney, and subsequently, without discharging the attorney, settles the case directly with the defendant, the attorney may assert his statutory lien against the settlement proceeds, and collect the contracted-for percentage from that recovery.

Thus in *Ward,* the defendant Donovan had a claim against a railroad company for personal injuries. He employed Ward as his attorney to prosecute the claim, agreeing in writing to pay Ward:

" . . . thirty-five percent (35%) in case said cause of action is settled after it goes upon the day calendar, or is tried, . . . of the amount received or recovered in such settlement or litigation in addition to the taxable costs and disbursements."

Ward commenced suit on behalf of Donovan against the railroad company. After the case had been placed upon the day calendar, Donovan entered into direct negotiations with the railroad company, settling his claim in consideration of a payment by the railroad company of $4800, together with the railroad company's further agreement to pay Ward any legal lien he might have on account of his contract with Donovan. The case went to the Court of Appeals on the narrow question of whether Ward's thirty-five percent entitlement applied only to the settlement sum of $4800, or whether Ward was also entitled to thirty-five percent of the thirty-five percent which the railroad company had agreed to pay to Ward in settlement of his claim against Donovan. In limiting Ward to a recovery of thirty-five percent of the $4800 settlement amount, the Court of Appeals stated:

" . . . When Donovan agreed to pay to plaintiff a certain percentage 'of the amount received or recovered * * * in * * * settlement in addition to the taxable costs and disbursements' the parties evidently meant that the sum paid to Donovan as damages and in settlement of his claim should be the basis upon which this 35 per cent should be computed. When, therefore, the railroad company paid to Donovan $4,800 in full settlement of his claim that payment presumptively ended the liability of the railroad company and fixed the basis for the computation of plaintiff's percentage. The parties realizing this, and Donovan apparently being unwilling to have the amount which he had thus 'received or recovered in such settlement' devoted in part to the payment of his attorney's lien made with the railroad company the agreement by which it agreed to pay 'any legal lien Attorney Hamilton Ward may have on account of contract.' That is, the railroad company agreed to assume the place of Donovan and pay to Mr. Ward any lien which the latter might have on account of the $4,800 which had been paid to Donovan. The sum which it agreed to pay was solely and exclusively the sum of 35 per cent upon $4,800 in discharge and satisfaction of a lien and we are entirely unable to see how the sum thus agreed to be paid in satisfaction of a specific lien can be made the basis of a further percentage. The sum which the railroad company agreed to pay for this purpose was not any part of the general sum 'recovered or received' by Donovan. It was to be paid for the purpose of discharging the lien on that sum and when it was paid it discharged the lien and did not become the basis for the assertion of further claims." 235 N.Y. at 243–244, 139 N.E. at 254.

In *Reisfeld,* a child was killed by a truck. The father retained attorneys to bring an action for damages. Their compensation was to be fifty percent of any recovery by settlement or verdict. The attorneys caused the father to be appointed administrator of the child's estate, and served a summons upon the owner of the truck. The action was thereafter settled by the parents directly with the truck owner, the amount of $1,000 being paid and divided between the parents. The attorneys sought to

charge the defendant truck owner with a lien to the extent of fifty percent of the sum recovered through the settlement. The Court of Appeals held that such liability existed in respect of the $500 paid to the father, who had retained the attorneys, but that the attorneys' services in respect of the mother's share of the settlement proceeds was governed by principles of *quantum meruit*.

The present defendants contend that *Ward* and *Reisfeld* are inapplicable because, unlike the case at bar, the attorneys had not been discharged by the client prior to the client's direct settlement of the claim with the defendant. Careful examination of the New York cases persuades me that defendants' contention is well-founded. Thus in *Reisfeld, supra,* the Court of Appeals was careful to observe:

"We think it unimportant that the father fixed the terms of the retainer before his appointment as administrator. By prosecuting the action after appointment he approved and continued the arrangement. We think also that *at the time of the settlement the petitioners [attorneys] employment had not been terminated by the client, and hence that the case is not brought within the rule in Martin v. Camp,* 219 N.Y. 170, 174, 114 N.E. 46, [L.R.A.1917F, 402]." 227 N.Y. at 141, 124 N.E. at 726 (emphasis and material in brackets supplied).

The rule in *Martin v. Camp,* 219 N.Y. 170, 114 N.E. 46 (1916), which the Court of Appeals found inapplicable in *Reisfeld,* is as follows:

"That the client may at any time for any reason or without any reason discharge his attorney is a firmly established rule which springs from the personal and confidential nature of the relation which such a contract of employment calls into

existence. (*Matter of Dunn,* 205 N.Y. 398, 98 N.E. 914, [Ann.Cas.1913E, 536].) If the client has the right to terminate the relationship of attorney and client at any time without cause, it follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract. If in such a case the client can be compelled to pay damages to his attorney for the breach of the contract, the contract under which a client employs an attorney would not differ from the ordinary contract of employment. In such a case the attorney may recover the reasonable value of the services which he has rendered, but he cannot recover for damages for the breach of contract. The discharge of the attorney by his client does not constitute a breach of the contract, because it is a term of such contract, implied from the peculiar relationship which the contract calls into existence, that the client may terminate the contract at any time with or without cause." 219 N.Y. at 174, 114 N.E. at 48.

■ It is this rule, as stated in *Martin v. Camp,* upon which the present defendants rely in contending that the Klein firm's compensation should be limited to the reasonable value of their services prior to the time of discharge. In *Reisfeld,* the rule of *Martin v. Camp* was not applied by the Court of Appeals only because, at the time of the settlement of the underlying claim in *Reisfeld,* the attorneys' employment "had not been terminated by the client . . .", *Reisfeld,* 227 N.Y. at 141, 124 N.E. at 726. The only conclusion that can be drawn is that where, as here, the client discharges his attorneys before entering into a settlement,[4] the attorneys' right to compensation is measured by *quantum meruit,* rather than by the provisions of the original retainer agreement.[5]

---

4. Cook discharged the Klein firm in a letter dated May 13, 1977.

5. In *Martin v. Camp,* the original contract pursuant to which the attorneys were employed "stipulated that the compensation to be paid should be contingent upon success and fixed the sum that was to be paid in event of success

as a proportion of the amount recovered." 219 N.Y. at 172, 114 N.E. at 47. *Under the rule in Martin v. Camp,* discharge of the attorney abrogates the contract, including such a provision for compensation, and relegates the attorneys to their *quantum meruit* claim. *Morgan v. Drewry,* 3 Misc.2d 440, 150 N.Y.S.2d 897 (Sup. Ct.N.Y.Cty.1956), also cited by the Klein firm,

■ The present defendants are accordingly correct in their reliance upon *Paolillo, supra,* and the authorities and principles referred to therein. The Klein firm seeks to distinguish these authorities because they involve substituted attorneys. However, the foregoing analysis of the New York cases demonstrates that this is not the vital distinction. The vital distinction turns upon whether, at the time of the client's direct settlement with the defendant, the attorneys were still within his employ; or whether the attorneys had been discharged prior to the time of settlement. In the latter circumstance, the original contract of employment between attorney and client is not in effect at the time of settlement, its terms accordingly will not be enforced, and the attorneys are limited to the reasonable value of their services prior to the time of their discharge. Nothing in § 475 of the Judiciary Law requires a different result, since a *quantum meruit* payment in these circumstances constitutes full˙ satisfaction "of a charging lien upon the client's claim and any recovery which may be obtained under Section 475 of the Judiciary Law," *Paolillo, supra,* at 251.

In view of the undisputed facts that the Klein firm was discharged by Cook in May of 1977, and Cook did not settle with the defendants until January of 1978, this case falls within the rule of *Martin v. Camp,* and the Klein firm's compensation is limited to the reasonable value of their services prior to their discharge.

■ As for the amount of compensation, the pertinent principles are well stated by Judge MacMahon in his comprehensive opinion in *Paolillo, supra.* As with the case of the substituted-for attorneys in *Paolillo,* the Klein firm's predischarge activities were essentially limited to the filing of a complaint and preliminary investigation. No depositions had been taken. The time

schedule in the Klein affidavit of April 7, 1978 reflects a total of 38 hours (in round figures) expended from January 18, 1977 to and including May 19, 1977.[6] While no underlying diary entries or time sheets are submitted, this claimed expenditure of time appears reasonable in respect of the activities described, and I accept it.

The Klein firm's contention that its time should be valued at $150 per hour is rejected. No showing is made of whether, and to what extent, the activities described were performed by paralegals or junior attorneys. Surely some of these activities fell within the competence of such individuals. In *Paolillo,* a 1969 decision, it was apparent˙ that a senior partner of the firm had done the work involved; Judge MacMahon allowed $60 per hour in respect of lawyers' time. Having in mind inflation, I will allow $100 per hour in the case at bar, an adequate figure particularly where one considers the uncertainty as to who performed the work.

The Klein firm includes in its claim its activities subsequent to the May, 1977 discharge. These are said to represent "the efforts by our office in opposing defendants' current application [to approve the settlement]. Our success in that regard would directly benefit Mr. Cook."[7] There is some basis for this contention, but not much. Rejection of the settlement would benefit Cook only if, after the ensuing trial and its attendant delays, he recovered a judgment netting him more than $108,000 after payment of legal fees and costs. The proposition is at best speculative. And the Klein firm itself must be regarded as a potential co-beneficiary of such efforts, should rejection of the settlement have led to its re-employment. Furthermore, it is apparent from the description of post-discharge activities that many of them related to the efforts of the Klein firm to persuade Cook to change his mind, and reinstate the

is not to the contrary. No contingent fee contract was involved in that case; the attorneys' claim was on the basis of *quantum meruit;* the court reduced the claim from $25,447.79 to $10,447.79.

6. I include in this total items 48 and 49 in the schedule, which while out of sequence and, in the case of item 48, refers to 1978, appear nonetheless to relate to pre-discharge activities.

7. Klein affidavit of April 7, 1978 at ¶ 5.

398

firm as his attorneys. It is apparent that the trip to New Orleans in September, 1977, to meet with Cook and members of his family, was primarily motivated by that purpose. Such activities, and the expenses connected with them, are for the account of the Klein firm and nobody else.

It must be recognized, however, that in response to the direction of this Court, the Klein firm expended efforts in reviewing the medical records and other documents submitted by defendants in support of settlement and in addressing the reasonableness of that settlement. While again these efforts could be regarded as for the mutual potential benefit of Cook and the Klein firm itself, I am inclined to regard them as legal services undertaken at the Court's direction to assist in evaluation of the fairness of the settlement negotiated by defendants with their employee. As such, these efforts may be regarded as protective of Cook's interests. While the Klein firm's attack upon the reasonableness of the settlement did not succeed, their efforts are nonetheless compensable. The amount of time involved is 18 hours, in round figures;[8] and I add them to the 38 hours previously referred to, giving total compensable time of 56 hours. At the rate of $100 per hour, this results in a legal fee of $5600.

Disbursements are claimed in the total amount of $983.15. I disallow the "expert fee" to Leo Zeller in the amount of $201.75; Mr. Zeller's services appear to have been limited to persuading Mr. Cook to retain the Klein firm. I also disallow, for the reasons stated *supra,* expenses attendant upon the New Orleans trip (telephone calls totalling $6.75 and travel expenses totalling $658.01). The balance of $116.64 is allowed.

## CONCLUSION

The settlement entered into between defendants and plaintiff Cook is approved as fair and reasonable. In consequence, the complaint will be dismissed with prejudice and without costs.

The firm of Klein, Cohen and Schwartzenberg is entitled to recover from defendants Moran Atlantic Towing Corporation and Moran Towing & Transportation Co., Inc., jointly and severally, the amount of $5716.64. I decline to award interest prior to judgment.

The Court is entering concurrently a judgment in accordance with this opinion.