**In the Matter of the Complaint of CAP'N RICK CORP., Plaintiff, as Owner of the F/V Cap'n Rick, for Exoneration from or Limitation of Liability.**

**Eolla VIVENTI, as Executrix and Personal Representative of the Estate of Peter A. Viventi, Deceased, Plaintiff,**

v.

**CAP'N RICK CORP., Defendant.**

**Nos. 75 Civ. 3362 (RWS), 76 Civ. 3581 (RWS).**

United States District Court, S. D. New York.

April 14, 1981.

On Motion to Alter Judgment July 10, 1981.

Fuchsberg & Fuchsberg, New York City, for Eolla Viventi and the Estate of Peter A. Viventi; Harvey Goldstein, New York City, of counsel.

Phillips & Cappiello, New York City, Former Counsel for Eolla Viventi and the Estate of Peter A. Viventi.

Donald Shapiro, Mount Laurel, N. J., Former Counsel for Eolla Viventi and the Estate of Peter A. Viventi.

Davidow, Sherman & Eddowes, Bridgeton, N. J., Former Counsel for Eolla Viventi and the Estate of Peter A. Viventi.

Eliot H. Lumbard, Lumbard & Phelan, P. C., New York City, Guardian *ad Litem* for Dion J. Viventi and Robin Viventi.

## OPINION

SWEET, District Judge.

On January 12, 1975 the fishing vessel CAP'N RICK rolled over and sank during a turn while engaged in clamming east southeast of Chesapeake Light Tower. Two crew members were drowned, Captain Peter A. Viventi and Adalbert Brodowski. What happened thereafter in actions brought under the Death on the High Seas Act, 46 U.S.C. § 761 *et seq.*, and Jones Act, 46 U.S.C. § 688, has brought little credit to the legal process or to certain members of the bar who have represented the representatives of the dead fishermen.

This memorandum opinion and order sets forth the basis of the court's approval of the settlement and the allocation of attorneys' fees, all of which were the subject of a hearing on December 3, 1980.

On December 22, 1980 this court approved the settlement of the claims of Joseph Wegrzyn, the representative of Adalbert Brodowski; and Eolla Viventi, as executrix and personal representative of the estate of Peter H. Viventi. That settlement terminated the exoneration proceedings in the matter of the complaint of the CAP'N RICK CORP., 75 Civ. 3362, the action brought by Mrs. Viventi, *Eolla Viventi v. CAP'N RICK CORP.*, 76 Civ. 3581 and the claim on behalf of Brodowski's estate, *Joseph Wegrzyn v. Cap'n Rick Corp.*, 76 Civ. 3582. The only asset of the CAP'N RICK CORP. was its insurance coverage in the amount of $500,000, the proceeds of which provided the settlement funds. This relatively simple resolution, almost six years after the event, is the final outcome of a process in which unsophisticated plaintiffs have been ill-served by over-reaching attorneys who may well have failed to represent their interests fully and adequately. The court and its processes must share the blame for the delay in recognizing the nature of the situation and in accomplishing the relief finally granted. These conclusions compel a recital of the history of these proceedings.

On August 12, 1976 Wegrzyn commenced his action represented by George Cappiello of Phillips & Cappiello. The Viventi action was also instituted on that day. Mrs. Viventi was originally represented by the law firm of Freedman, Borowsky & Lorry, Pennsylvania counsel. Ned Phillips ("Phillips") of Phillips & Cappiello was also associated with that firm. The matter had been referred to Freedman by Joshua Davidow ("Davidow"), a New Jersey attorney in Bridgeton, New Jersey.

The Wegrzyn and Viventi actions were thereafter stayed pending the outcome of the exoneration proceeding.

On June 5, 1978 the actions were reassigned to me. By opinion entered on November 8, 1978 discovery deadlines were set. In the meantime, Phillips continued to represent the plaintiffs in the Wegrzyn and Viventi actions and in the exoneration proceedings.

By the summer of 1978 a proposed settlement had been agreed upon by counsel providing for the payment of $315,000 to the Viventi's. Mr. Phillips sought to enforce the settlement, Mrs. Eolla Viventi having agreed to it informally. By memorandum opinion of November 3, 1978, the motion was denied. Mrs. Viventi, the mother of Peter Viventi, had consulted another New Jersey attorney, Donald Shapiro ("Shapiro"), who had advised her not to accept the settlement. Thereafter the firm of Fuchsberg & Fuchsberg was substituted for Phillips to represent the Viventi interests.

Harvey Goldstein ("Goldstein") of the Fuchsberg firm undertook to prepare the action and a series of orders was entered adjourning the date for filing a pre-trial order to January 2, 1980. On February 13, 1980 the parties appeared for trial on the exoneration proceeding and announced that a settlement had been reached. An order was signed to that effect.

Thereafter, predictably, difficulties arose in connection with attorneys' fees and an application was made for approval of the settlement, allocation of fees and the appointment of a guardian ad litem to protect the interests of the children of Peter Viventi. This motion was granted and on June 27, 1980 Eliot H. Lumbard, Esq. ("Lumbard") was appointed Special Guardian. His report was filed on October 24, 1980, and a hearing was held on December 3, 1980.

These proceedings have established that Mrs. Viventi initially consulted the firm of Davidow, Sherman & Eddower in Bridgeton, New Jersey, and, by way of referrals from that firm, eventually retained Phillips. Phillip's original retainer provided for a 40% contingency fee. When the amount of the Phillips fee became the subject of discussion, the contingent fee was reduced to 33⅓%. The Guardian ad litem reported that the intended distribution of the settlement, $430,000.00 in all, divided between Eolla Viventi ($35,000), Olive Viventi, widow of Peter ($188,500), a trust for Dion Viventi, son of Peter ($28,000) and a trust for Robin Viventi, daughter of Peter ($26,500), is fair to the minors.

However, the report of the guardian ad litem sets forth certain facts upon which it is suggested that a claim could have been made against the principal shareholder of the CAP'N RICK CORP., Arthur Richard Meyers who was apparently the owner and operator of the CAP'N RICK and other fishing vessels, one of which, the MARY JANE, was lost under similar circumstances on December 11, 1973. There is apparently reason to believe that both vessels had been altered by Meyers in such fashion as to affect their stability. Had such proof been adduced, exoneration might have been denied under 46 U.S.C. § 183. However, no evidence was presented here that such a denial would have increased the Viventi's recovery. The settlement was therefore approved by order dated December 22, 1980 and entered on December 24, 1980.

Pursuant to that order, $139,000 was set aside for fees. An additional $13,000 has been held in escrow for reimbursement of expenses. Both the Phillips and Fuchsberg firms claim nearly the entire fee amount. Fuchsberg acknowledges that a portion of this fee and certain expenses should be allowed to Shapiro, who performed certain services for the plaintiffs although he did not participate in the trial preparation, has not claimed any Jones Act trial experience and is not admitted in this district.

The fee requests are as follows.

Davidow claims that he is entitled to payment at the rate of $150 per hour for the one hundred and twenty hours he claims to have expended in connection with this litigation, for a total of $18,000. In addition, he requests reimbursement for

$866.34 in expenses. Phillips requests a flat fee of $105,000, representing a contingent fee of 33⅓% of the original settlement proposal of $315,000, plus $1,436.59 in expenses. Shapiro requests payment for 391 hours of work, plus reimbursement of $9,300.00 in expenses he claims to have incurred. Goldstein applies for compensation at a contingency rate of 33⅓% of the final settlement. Lumbard requests payment for 36.9 hours expended, plus reimbursement for $121.54 in costs. He gives as his usual hourly rate $175, though he does not press a claim for payment at that rate for his services here.

Arriving at a fair allocation of fees in light of the history outlined above and the finite sum available is complicated by the differing bases of the fee applications here, that is, the hourly rate sought by some and the contingency rate sought by others. For the reasons set forth below, however, I have determined to allocate the $139,000 available for payment of fees as follows:

| Lumbard | $5,525 |
|---|---|
| Shapiro | $19,550 |
| Goldstein | $90,833 |
| Phillips | $23,092, of which Phillips is to receive $18,592 |
| Davidow | $4,500 to be paid out of the $23,092 fund allocated to Phillips |

The fees of Lumbard and Shapiro reflect application of the formula for the calculation of attorneys' fees utilized in this Circuit and set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470–71 (2d Cir. 1974). *See also Cohen v. West Haven Board of Police Commissioners*, 638 F.2d 496 (2d Cir. 1980). *Grinnell* established a two-step process for such calculations. First, the number of hours expended by each attorney involved in the case is multiplied by the hourly rate normally charged for similar work by attorneys of like skill in the area, to obtain a "lodestar" figure. Second, the lodestar figure may be adjusted upward or downward to reflect such factors as the risk and complexity of the litigation and the quality of the representation. *Id.*

■ Lumbard's fee reflects a rate of payment of $150 per hour for the 36.9 hours he expended on this matter. This figure is in line with fees awarded to counsel of similar skill for similar work in this district. *See City of New York v. Darling-Delaware*, 440 F.Supp. 1132 (S.D.N.Y.1977) (hourly rate of $150–$175 termed reasonable). Although he performed a valuable service and the quality of his work was quite high, because his role in this litigation involved virtually no risk, I have determined not to increase his award over the lodestar amount.

■ Shapiro's fee of $19,550 reflects an hourly rate of $50 for the 391 hours he expended. That figure has been selected, in the absence of any statement from Shapiro regarding his normal hourly rate, because of his total lack of experience in admiralty before this case. *See Blank v. Talley Industries, Inc.*, 390 F.Supp. 1 (S.D. N.Y.1975) ($50 per hour awarded for associates' time). Shapiro's role in this litigation was important. Nonetheless, the case was not undertaken at great risk and the issues presented were not novel or particularly complex. I therefore do not deviate from the lodestar amount.

■ The fee applications of Phillips, Goldstein, and Davidow present more difficult problems. Phillips initially represented the representatives of each seaman in their claims to the fund created by the insurance. While the interests of the claimants as to the liability of the CAP'N RICK Corp. were joint, it was improper for Phillips to represent each claimant with respect to the division of the settlement fund, certainly without specific disclosure of the conflict and an approval by each of his clients. *ABA Code of Professional Responsibility*, Canon 5; DR 5–105. Further substantial doubt has been cast upon the adequacy of Phillips' representation, apart from the conflict issue, given the lack of any meaningful investigation directed to the personal liability of Arthur Meyers. This is particularly true in these circumstances where Phillips sought to enforce a settlement which was subsequently rejected after he was relieved. Finally, there is no question but that the initial retainer agreement was improper under the controlling authorities in this court.

See *Cook v. Moran Atlantic Towing Corp.*, 79 F.R.D. 392, 394–95 (S.D.N.Y.1978) (applying New York law to evaluation of contingent fee); *Paolillo v. American Export Isbrantsen Lines*, 305 F.Supp. 250 (S.D.N.Y. 1969); § 603.7(e)(2), *Rules Governing the Conduct of Attorneys*, New York Supreme Court, Appellate Division, 1st Dept. These factors, taken together, are sufficient to deny Phillips any contingent fee recovery. *See First National Bank of Cincinnati v. Pepper*, 454 F.2d 626, 633 (2d Cir. 1972) (attorney guilty of professional misconduct has no right to payment of fees) and other cases cited therein. *See also Gair v. Peck*, 6 N.Y.2d 97, 106, 188 N.Y.S.2d 491, 497, 160 N.E.2d 43, 48 (1959), *cert. denied*, 361 U.S. 374, 80 S.Ct. 401, 4 L.Ed.2d 380 (1960) ("[c]ontingent fees may be disallowed as between attorney and client in spite of contingent fee retainer agreements, where the amount becomes large enough to be out of all proportion to the value of the professional services rendered"). *Cf. Blank v. Talley*, *supra* (champerty warrants disallowance of all fees). However, services were in fact performed, and considering the results achieved I conclude that they are worth roughly $23,000, which sum is reduced to $18,592 by the allocation for Davidow, discussed below.

■ Goldstein of the Fuchsberg firm prepared the actions for trial and increased the settlement fund for the Viventi's from $315,000 to $430,000. There can be little dispute as to the firm's entitlement to its full contingency of $38,333 on this $115,000 increase. As to remaining amount of the recovery, $315,000, Phillips had performed substantial services and certain of these clearly benefited the Fuchsberg firm, as did the services performed by Shapiro. Although no precise measurement of the value of these services is possible, in my estimation these factors reduce the amount of the recovery subject to Fuchsberg's contingent fee by approximately one half, to $157,500, thus entitling the Fuchsberg firm to a total recovery of $90,833. *See Jaslow v. United States*, 308 F.Supp. 1164 (E.D.N.Y.1970) (allocating fees among successive attorneys).

■ There remains for discussion the allocation of the remaining $4,500 to Davidow. When Phillips succeeded Davidow, the two agreed that Davidow would recover for his efforts on a quantum meruit or hourly basis out of any eventual recovery by Phillips. In support of his fee application, Davidow submitted a detailed affidavit outlining the services he performed as the Viventi's attorney but not detailing the hours expended on those services. He claims that he is entitled to payment for all of the 120 hours he alleges to be reflected by that affidavit. However, substantial portions of the work he describes were not performed in connection with this litigation, but rather in connection with the probate of the deceased's will and collection on his insurance policies. Davidow is not entitled to payment for those services out of the fund generated by this litigation. As mentioned above, his affidavit does not provide a breakdown of the time expended on each task performed; therefore a precise determination of the hours for which he is entitled to compensation here is not possible. However, a fair reading of that affidavit suggests that roughly one quarter of the 120 hours he claims to have expended were spent on work related to this litigation. Therefore, I find that he is entitled to just under half of the $18,000 he has requested, or $4,500.

There remains for consideration only the award of expenses out of the $13,000 fund created for that purpose.

■ Lumbard is to receive $121.54 reimbursement for the expenses he incurred. Phillips is to receive $1,436.59. Davidow is to recover $866.34. Shapiro will receive $7,150. That last figure reflects a reduction of $2,150 from the amount he requested. I am disallowing that sum, which he claims to have advanced to his clients, because such advances are not condoned by the canons of ethics unless limited to advances of litigation expenses, and Shapiro has not indicated the nature of the advance made here.

The remainder of the $13,000 fund is to be distributed in accordance with the order of this court entered on December 24, 1980.

The fee allocation is deemed fair and appropriate to the attorneys involved, if not over generous to Phillips.

Submit judgment on notice within ten (10) days.

### On Motion To Alter Judgment

Ned R. Phillips ("Phillips"), a former attorney for plaintiff Eolla Viventi, has moved pursuant to Rule 59(e), Fed.R.Civ.P., to alter the judgment entered in the above-captioned action on May 18, 1981. That judgment allocated fees to five attorneys who played a part in this protracted litigation. Phillips was awarded $18,592, considerably less than the $105,000 that he requested under a contingent fee agreement once entered into between himself and his former client. The reasons for the reduction are set forth in the opinion of this court in this action dated April 14, 1981. Phillips' motion is denied.

Only one ground raised in support of this motion merits discussion. As set forth in the April 14 opinion, one basis on which Phillips was awarded less money than he claimed entitlement to was that his initial retainer provided for a contingent fee of 40%, in excess of the 33⅓% allowed in the State of New York. Phillips contends that that arrangement was proper under Section 603.7(e)(5) of the Rules Governing the Conduct of Attorneys, New York Supreme Court, Appellate Division, First Department, which exempts lawyers retained by other lawyers who are not themselves subject to the New York rules from the one-third contingent fee limitation. Phillips points to the fact that he was retained in this case by way of a referral from a Pennsylvania firm as support for his contention that his initial 40% fee arrangement was proper under this provision. He argues that the court's reliance on this initial fee arrangement in reducing his allocation below that which he requested was therefore misplaced.

Even assuming the validity of Phillips' contention regarding the propriety of his initial fee arrangement, however, I conclude that the reduction in Phillips' fee below his request was warranted. As set forth in the April 14 opinion, that reduction was based not only on the initial 40% fee, but on a number of other factors as well, including the quality of Phillips' work. Even if the 40% fee were to be deemed proper, those other factors would lead me to conclude that Phillips is entitled to no more than he was awarded. *See generally Dunn v. H. K. Porter Co.*, 602 F.2d 1105, 1108 (3d Cir. 1979) (courts' supervisory power over members of the bar may be exercised to monitor contingent fee agreements and to reduce fees when agreements yield unreasonable results); *In re Michaelson*, 511 F.2d 882, 888 (9th Cir.) *cert. denied*, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975) (courts have inherent power to regulate the bar and its inquiry into fee arrangements). *Farmington Dowel Products Co. v. Forster Mfg. Co.*, 421 F.2d 61, 87 (1st Cir. 1970) (courts have "generic power to confine the cost of legal services to a reasonable amount.")

There is an additional and perhaps even more significant factor that defeats Phillips' claim to entitlement to his full contingent fee. That is that at the time of the final settlement, Phillips no longer represented Mrs. Viventi, who had retained other counsel. Under New York law, which governs this matter, "where . . . the client discharges his attorneys before entering into a settlement, the attorneys' right to compensation is measured by *quantum meruit*, rather than by the provisions of the original retainer agreement." *Cook v. Moran Atlantic Towing Corp.*, 79 F.R.D. 392, 396 (S.D.N.Y.1978). In such a case, "the original contract of employment between attorney and client is not in effect at the time of settlement, its terms accordingly will not be enforced, and the attorneys are limited to the reasonable value of their services prior to the time of their discharge." *Id.* at 397. In my estimation, the reasonable value of Phillips' services here is the $18,592 which he was awarded; the contract having been

**38**

dissolved, he is entitled to no more, and specifically is not entitled to the full contingent fee recovery he continues to seek.

Phillips' other contentions are refuted by the record and, in large part, dealt with in the April 14 opinion. They compel no other result and warrant no further discussion.

Motion denied.