863 F.2d 47
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re Thomas M. BAGNASCO.
BERNSTEIN & BERNSTEIN, P.C., Petitioner-Appellant,
v.
SWANSON & TORGOW, P.C., Respondent-Appellee.
 No. 87-1979.
 United States Court of Appeals, Sixth Circuit.
 Nov. 16, 1988.
 
 Before CORNELIA G. KENNEDY and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This appeal involves the allocation of an award of attorney fees. Mikael G. Hahner (Hahner) was originally associated with the law firm of Bernstein & Bernstein (B & B) and, during his employment with B & B, undertook representation of Thomas Bagnasco (Bagnasco) and his mother in a lawsuit arising out of the death of Bagnasco's brother during a prison lock-up. During the course of the litigation, Hahner left B & B and became associated with another law firm, Swanson & Torgow (S & T). Bagnasco promptly thereafter terminated his relationship with B & B and sought Hahner's continued representation. The litigation was ultimately settled and a portion of the settlement amount was certified to be distributed as an attorney fees award. Hahner and his former law firm sought resolution of the issue of B & B's lien upon the award of attorney fees. B & B objected to this determination and appealed to the district court, which affirmed the magistrate's report and recommendation. We affirm.
 
 
 2
 Bagnasco was referred to B & B by his sister-in-law, to whom B & B was recommended by an attorney familiar with the firm's reputation. He initially contacted B & B in May of 1985 seeking representation to pursue his claims based upon his brother's death. During his initial interview, Bagnasco signed a one-third contingency fee agreement with B & B. Bagnasco originally believed that his case would be handled by another attorney at B & B, but he was instead referred to Hahner. After speaking with several other attorneys at other firms, Bagnasco decided that Hahner was the "best man" to represent him.
 
 
 3
 During the period May 1985 through October 1985, Hahner performed 16 hours of work on Bagnasco's behalf, investigating his claims and preparing and filing a complaint. On or about October 30, 1985, Hahner informed Bagnasco that he would be leaving B & B and that Bagnasco should contact another attorney at the firm to determine how his case would be handled.
 
 
 4
 Dissatisfied with the manner in which the new attorney was handling his case, Bagnasco decided to terminate his relationship with B & B and seek Hahner's continued representation. A squabble ensued over possession of Bagnasco's file. Ultimately, Bagnasco and Hahner threatened B & B with filing a complaint with the Attorney Grievance Committee. B & B and Hahner resolved the matter by agreeing to have Hahner substituted by formal motion as counsel for Bagnasco, leaving the matter of a lien to be resolved upon conclusion of the litigation.
 
 
 5
 Upon conclusion of the litigation, B & B and Hahner appeared before the magistrate to whom the matter had been referred for an evidentiary hearing on the issue of the amount of B & B's lien upon the attorney fees award granted in Bagnasco's litigation. By order dated August 6, 1987, the magistrate found that B & B was entitled to the rate of $125 per hour under a quantum meruit approach taking into account overhead and other expenses and Hahner's unavailability to work on other files during the course of the hours devoted to Bagnasco's case while he was employed by B & B. The magistrate further stated:
 
 
 6
 "In coming to the above conclusion, I reject the assertion that Mikael G. Hahner acted unethically. It is clear that the impetus to discharge Bernstein & Bernstein came from the client, and that the client simply wanted to stick with an attorney he had come to trust, namely Mr. Hahner. I have been presented no proof that the firm of Bernstein & Bernstein spent any time on the file apart from Mr. Hahner's work up to the day he left their employ. I see no basis to award, on a quantum meruit theory, any attorneys' fee past this point in time.
 
 
 7
 Following the district court's affirmance of the magistrate's order, B & B timely filed this appeal.
 
 
 8
 The parties agree that because the determination of a reasonable fee under a quantum meruit theory is a factual matter, the standard to be applied is whether the findings of the magistrate as affirmed by the district court were clearly erroneous. B & B asserts two reasons why the magistrate's findings are clearly erroneous. First, B & B contends, based upon the authority of Paolillo v. American Export Isbrandtsen Blinds, Inc., 305 F.Supp. 250 (S.D.N.Y.1969), that the magistrate erred by utilizing an hourly formula rather than a percentage formula to calculate B & B's lien. Paolillo involves an application by attorneys working on a contingent fee basis who were discharged for an order fixing their fee for the services they rendered prior to the substitution of other attorneys to complete the case. The court concluded that the appropriate method for determining the discharged attorneys' fee was by quantum meruit, "whether that be more or less than that provided in the contract or retainer between the attorney and client." 305 F.Supp. at 251.
 
 The court went on to state:
 
 9
 "The outgoing attorneys have the option of taking a fixed dollar amount compensation, presently determined on a basis of quantum meruit, or, instead, of taking a contingent amount or percentage also based on quantum meruit but with the amount or percentage determined in an ancillary proceeding at the conclusion of the case."
 
 
 10
 Id. B & B suggests that Paolillo requires that an hourly formula be used only when the fee is to be determined at the time the attorney seeking a lien is discharged, but that at the conclusion of the case, quantum meruit is to be determined based upon the "amount of percentage." Paolillo does not say this, and in fact it is clear that the court in Paolillo utilized an hourly formula although the application for an order fixing fees was made at the conclusion of the litigation.
 
 
 11
 B & B's second argument is that the magistrate failed to take into account the significance of the work done for Bagnasco while Hahner was employed by B & B. B & B argues that preliminary investigation and the filing of a lawsuit constitutes a major part of the total litigation, and that B & B therefore is entitled to a larger portion of the total fee. As an alternative theory, B & B urges that the magistrate erroneously failed to account for the significant role the firm's reputation played in retaining Bagnasco as a client, and that B & B is entitled to compensation for its role in bringing Bagnasco to Hahner. It therefore argues that Hahner is at most entitled to an hourly rate based upon his salary while an employee of B & B, with B & B entitled to the remainder of the award.
 
 
 12
 An attorney who has been discharged in Michigan is entitled to quantum meruit recovery, based on the number of hours worked multiplied by a reasonable hourly rate. Ambrose v. Detroit Edison Co., 65 Mich.App. 484, 237 N.W.2d 520 (1975); Law Offices of Lawrence J. Stockler v. Semaan, 135 Mich.App. 545, 355 N.W.2d 271 (1984). Ambrose states that a reasonable hourly rate should reflect the number of hours worked, the quality of the attorney, the difficulty of representation, and other relevant factors.[1] A district court's award and division of attorney fees must be upheld absent an abuse of discretion. Krause v. Rhodes, 640 F.2d 214, 218 (6th Cir.), cert. denied sub nom., Sindell, Lowe & Guidukaldi v. Attorney General of Ohio, 454 U.S. 836 (1981).
 
 
 13
 For the reasons stated, we find no error in the determination by the magistrate and the district court in the allocation of fees in this case. We accordingly AFFIRM.
 
 
 
 [1]
 We have previously recognized the authority of Ambrose in Dean & Bandy v. Holiday Inns, Nos. 87-1624/1919, slip op. (6th Cir. Oct. ---, 1988)